UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MITCHELL TISCHAUSER,
DELOS W. LUEDTKE,
PADEN ROTHENBERGER,
DUSTIN J. DEMITRIOU, and
RONDA DEMITRIOU,

     Plaintiffs,

  v.            Case Nos. 20-C-1291, 20-C-1917,
                    21-C-220, 21-C-965,
DONNELLY TRANSPORTATION, INC.,    23-C-538, 23-C-539, and
JOSUE R. HIDALGO-CLARKE,        23-C-556
FIREBIRD TRUCKING, INC.,
MODE TRANSPORTATION, LLC,
SYSCO CORPORATION,
ACE PROPERTY & CASUALTY
INSURANCE COMPANY, and
STATE NATIONAL INSURANCE CO.,

     Defendants.

---

**DECISION AND ORDER GRANTING MOTIONS TO DISMISS**

---

  These consolidated cases arise out of a motor vehicle accident that occurred on January 24, 2020, on U.S. Highway 45 in the Town of Caledonia in Waupaca County, Wisconsin. Plaintiffs Mitchell Tischauser, Delos W. Luedtke, Paden Rothenberger, and Dustin J. Demitriou allege that they were seriously injured when a commercial motor vehicle (CMV) tractor and trailer combination driven by Defendant Josue R. Hidalgo-Clarke crossed the center line and collided with their vehicle. Plaintiff Ronda Demitriou claims loss of consortium due to the injuries sustained by her husband. At the time of the collision, Clarke was en route to pick up a load of products, purchased by Defendant Sysco Corporation, from Manawa, Wisconsin, and transport them to a distribution center in Front Royal, Virginia. According to Plaintiffs' respective complaints, Clarke was employed as a driver by Defendant Firebird Trucking, Inc., and by

Defendant Donnelly Transportation, Inc., and Firebird owned the truck that Clarke was driving. Defendant Sysco worked with a broker, Defendant Mode Transportation, LLC, to hire Donnelly as the carrier. Donnelly, in turn, hired Firebird, resulting in Clarke being the CMV driver for the purpose of moving Sysco's goods for profit. The court has jurisdiction under 28 U.S.C. § 1332, as Plaintiffs are all citizens of the State of Wisconsin, while Defendants are citizens of other States, and the amount in controversy exceeds $75,000.

Plaintiffs' amended complaints added Sysco and Mode as defendants and asserted four claims against them: (1) negligent selection/hiring, training, or supervision; (2) agency/vicarious liability; (3) joint enterprise/venture; and (4) loss of consortium to as to Ms. Demitriou. *See* Luedtke 2d Am. Compl. ¶¶ 102–216 & 446–59, Dkt. No. 116; Demitriou Am. Compl. ¶¶ 49–162, 390–403 & 434–41, Dkt. No. 117; Rothenberger Am. Compl. ¶¶ 94–206 & 436–49, Dkt. No. 18; Tischauser Am. Compl. ¶¶ 109–222 & 452–59, Dkt. No. 119. Mode and Sysco moved for dismissal of Plaintiffs' claims against them on the grounds that they are preempted by federal law, the amended complaints fail to state claims against them upon which relief can be granted under Rule 12(b)(6), and that the claims are barred by Wisconsin's three-year statute of limitations for personal injury actions, Wis. Stat. § 893.54(1m)(a).

On July 18, 2023, after the motions were fully briefed, the Seventh Circuit issued its decision in *Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453 (7th Cir. 2023), which held that the Federal Aviation Administration Authorization Act (FAAAA), specifically 49 U.S.C. § 14501(c), preempted a claim against a freight broker to recover for negligent hiring of a motor vehicle carrier whose employee was driving a truck involved in an accident that resulted in the death of the plaintiff's husband. In so ruling, the court held that "the plain text and statutory scheme [of the FAAAA] indicate that 49 U.S.C. § 14501(c)(1) bars Ye's negligent hiring claim against

2

GlobalTranz [a broker] and that the [FAAAA's] safety exception in § 14501(c)(2)(A) does not save it from preemption." *Id.* at 456, 466.

In light of the Seventh Circuit's decision in *Ye*, the court held a hearing on Sysco and Mode's motions to dismiss on August 1, 2023. At the conclusion of the hearing, the court orally granted both motions, holding that *Ye* was controlling as to Plaintiffs' claims against Mode and that, while it was less clear that *Ye* controlled as to Plaintiffs' claims against Sysco, the complaints failed to state any claim against Sysco and Mode. This written decision is intended to confirm the court's ruling from the bench. The court further concludes that Plaintiffs' claims against Sysco are also preempted and that the claims of Plaintiffs Dustin and Ronda Demitriou are barred under the applicable statute of limitations.

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Rule 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion for Rule 12(b)(6) dismissal, a complaint must contain factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he must plead "more than labels and conclusions." *Id.* Therefore, a simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (internal citations and quotations marks omitted);

3

*see also Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

Dismissal under Rule 12(b)(6) may also be granted "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense." *Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). This includes the affirmative defense of preemption. *Gravitt v. Mentor Worldwide, LLC*, 289 F. Supp. 3d 877, 884 (N.D. Ill. 2018) (dismissing plaintiff's FDA noncompliance claims as preempted under § 360k(a) on defendant's 12(b)(6) motion); *see also Ramljak v. Boston Sci. Corp.*, No. 20-C-1903, 2021 WL 1209025, at *2 (N.D. Ill. March 31, 2021). Although more properly considered on a motion for judgment on the pleadings under Rule 12(c), the difference is in form only because "[a] motion for judgment on the pleadings under Rule 12(c) . . . is governed by the same standards as a motion to dismiss for failure to state a claim." *Laverty v. Smith & Nephew, Inc.*, 197 F. Supp. 3d 1026, 1029 (N.D. Ill. 2016) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)).

## ANALYSIS

**A. Federal Preemption**

The FAAAA provides that, subject to limited exceptions, a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). As noted above, *Ye* held that this provision barred the plaintiff's negligent hiring claim against the freight broker in that case. At the conclusion of the hearing on Mode's and Sysco's motions, the court held that Plaintiffs' claims against Mode were clearly preempted in light of the Seventh Circuit's decision in *Ye*. The court did not hold at that time that Plaintiffs' claims against Sysco were likewise preempted under the

4

FAAAA but invited supplemental authority in support of the proposition that "the shipper, someone in the position of Sysco, would be entitled to that protection." Tr. at 24:25–25:4. In response to the court's invitation, counsel for Sysco pointed the court to *Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364 (2008), and briefly explained the case's applicability. Having given further consideration to *Rowe*, the court now concludes that Plaintiffs' claims against Sysco are also preempted under 49 U.S.C. § 14501(c)(1).

The arguments Plaintiffs offered against Mode's contention that the FAAAA preempts Plaintiffs' claims against it are unpersuasive. As the court noted at oral argument, *Ye* essentially held that state tort law governing negligence actions against brokers is preempted by the FAAAA because those laws significantly impact the price and cost, as well as the regulation, of interstate trucking and interstate transportation. In *Ye*, the court held that the party seeking to establish preemption "must show both that a state enacted or attempted to enforce a law and that the state law relates to broker rates, routes, or services either by expressly referring to them, or by having a significant economic effect on them." 74 F.4th at 458 (internal quotations omitted). *Ye* determined that the broker in that case, GlobalTranz Enterprises, Inc., satisfied both parts of the test. First, common law tort claims have the force and effect of law. *Id.* at 459 (citing *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281–82 (2014)). Second, the application of Illinois' common law of negligence would have a significant economic effect on broker services:

> By recognizing common-law negligence claims, courts would impose in the name of state law a new and clear duty of care on brokers, the breach of which would result in a monetary judgment. This is exactly what Ye seeks here against GlobalTranz. To avoid these costly damages payouts, GlobalTranz and other brokers would change how they conduct their services—for instance, by incurring new costs to evaluate motor carriers. Then, by changing their hiring processes, brokers would likely hire different motor carriers than they would have otherwise hired without the state negligence standards. Indeed, that is the centerpiece of Ye's claim: that GlobalTranz should not have hired Global Sunrise.

*Id.*

5

Case 1:20-cv-01291-WCG   Filed 12/05/23   Page 5 of 16   Document 202

The court in *Ye* then analyzed the FAAAA's safety exception, which provides that laws within a state's "safety regulatory authority . . . with respect to motor vehicles" are not preempted. *Id.* at 460 (quoting 49 U.S.C. § 14501(c)(2)(A)). The court determined that the safety exception did not save Ye's claim. Preliminarily, the court explained that it did not need to reach the issue of whether "a state's tort law is part of its 'safety regulatory authority'" because it "conclude[d] that Ye's claims fail to satisfy the second half of the safety exception's text"—i.e., "a common law negligence claim enforced against a broker is not a law that is 'with respect to motor vehicles.'" *Id.* (quoting 49 U.S.C. § 14501(c)(2)(A)). The basis for that holding was that "the exception requires a direct link between a state's law and motor vehicle safety," and the court saw "no such direct link between negligent hiring claims against brokers and motor vehicle safety." *Id.*

In particular, the FAAAA's text did not support the existence of a direct link because the definition of "motor vehicle," *see* 49 U.S.C. § 13102(16), does not include brokers, and there is "no mention of brokers in the safety exception itself . . . which suggests that such claims may be outside the scope of the exception's plain text." *Id.* (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261–62 (2013)). The rest of the text of the safety exception "carefully except[s] state laws for motor vehicle safety, cargo loads, and motor carrier insurance"—but is devoid of "any reference to brokers or broker services." *Id.* at 461. And "[w]hile it listed broker services in § 14501(c)(1)'s express preemption provision, Congress declined to expressly mention brokers again in reference to states' safety authority. Reading further, we see the same omission of brokers from § 14501(c)(2)'s other savings provisions for 'intrastate transportation of household goods' and 'tow truck operations.' *Id.* § 14501(c)(2)(B), (C)." *Id.*

Moreover, because "Congress could have chosen to save state safety laws enforced 'with respect to motor carriers and brokers,' but it did not," the court "hesitate[d] to read broker services into parts of the statute where Congress declined to expressly name them, especially when it

6

contemplated them elsewhere within the same statutory scheme." *Id.* (citing *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) ("A textual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision.")). Finally, in § 14501(b), titled "Freight Forwarders and Brokers," Congress "directly addressed state regulation of brokers by prohibiting states from enacting or enforcing laws 'relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.'" *Id.* (quoting 49 U.S.C. § 14501(b)(1)). "Following this broad preemption provision, however, Congress did not include a safety exception—another telling omission given that Congress included safety exceptions to the parallel preemption provisions for motor carriers of property (at issue here) and motor carriers of passengers." *Id.* In sum, the FAAAA's "text makes clear that Congress views motor vehicle safety regulations separately and apart from those provisions imposing obligations on brokers. And this separateness counsels a reading of 'with respect to motor vehicles' that requires a direct connection between the potentially exempted state law and motor vehicles. Any other construction would expand the safety exception's scope without a clear, text-based limit." *Id.* at 462 (quoting 49 U.S.C. § 14501(c)(2)(A)). Accordingly, *Ye* agreed with the district court that "the connection . . . between a broker hiring standard and motor vehicles" is "too attenuated to be saved under § 14501(c)(2)(A)." *Id.*

The instant case involves various Wisconsin common law tort claims against Mode, a broker. *Ye* involved just one Illinois common law tort claim against GlobalTranz, also a broker. However, nothing in *Ye* suggests that either the jurisdictional provenance of a plaintiff's tort claims or the precise nature of those tort claims should alter the outcome. *Ye* dealt specifically with only negligent hiring and vicarious liability claims under Illinois' common law brought against a broker. In addition to their negligent hiring and vicarious liability claims, Plaintiffs brought Wisconsin common law tort claims for joint enterprise/venture. However, all common law claims

7

have the force and effect of law. *Id.* at 459 (internal citation omitted). And each of Plaintiffs' claims here "would have a significant economic effect on broker services," just as the negligent hiring claim in *Ye* would have. *Id.* Accordingly, Plaintiffs' claims against Mode are preempted by the FAAAA. Notwithstanding Plaintiffs' contention at oral argument, *see* Tr. at 4:13–20, 5:23–25, & 6:06–08, *Ye* cannot be read to suggest that the jurisdictional provenance of a tort, or the type of tort at issue, makes a difference to that conclusion. *See Ye*, 74 F.4th at 458–59 (clarifying that the preemption inquiry is properly focused on whether the state tort law that the plaintiff is attempting to enforce "would have a significant economic effect on broker services" and otherwise not making a distinction based on the tort's jurisdictional origins or what specific tort it is). In addition, all the reasons that *Ye* gave for why the safety exception does not apply to brokers straightforwardly apply here. Accordingly, Plaintiffs' tort claims against Mode are preempted by the FAAAA.

The court turns next to Sysco's argument that the FAAAA preempts Plaintiffs' claims against it when Ye is read in conjunction with *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008). *Rowe* considered "two provisions of a Maine tobacco law, which regulate[d] the delivery of tobacco to customers within the State," and whether they were preempted by § 14501(c)(1) of the FAAAA, which provides, in relevant part, that "a State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 552 U.S. at 367–68. The first section of Maine's tobacco law, § 1555–C, prohibited "anyone other than a Maine-licensed tobacco retailer to accept an order for delivery of tobacco." *Id.* at 368 (quoting Me. Rev. Stat. Ann., Tit. 22, § 1555–C(1)). It then added that, "when a licensed retailer accepts an order and ships tobacco, the retailer must 'utilize a delivery service' that provides a special kind of *recipient-verification* service." *Id.* (quoting § 1555–C(3)(c)). Moreover, the delivery service was required to

8

make certain that (1) the person who bought the tobacco is the person to whom the package is addressed; (2) the person to whom the package is addressed is of legal age to purchase tobacco; (3) the person to whom the package is addressed has himself or herself signed for the package; and (4) the person to whom the package is addressed, if under the age of 27, has produced a valid government-issued photo identification with proof of age.

*Id.* at 368–69 (citation omitted). Violations were punishable by civil penalties. *Id.* at 369 (citing §§ 1555–C(3)(E) to C(3)(F) (first offense up to $1,500 and subsequent offenses up to $5,000)).

The second section, § 1555-D, prohibited "any person 'knowingly' to 'transport' a 'tobacco product' to 'a person' in Maine unless either the sender or the receiver has a Maine license." *Id.* (quoting § 1555–D). It then added that a "'person is *deemed to know* that a package contains a tobacco product' (1) if the package is marked as containing tobacco and displays the name and license number of a Maine-licensed tobacco retailer; or (2) if the person receives the package from someone whose name appears on a list of *un*-licensed tobacco retailers that Maine's attorney general distributes to various package-delivery companies." *Id.* (quoting § 1555–D) (emphasis in *Rowe*). Violations of this section were again punishable by civil penalties. *Id.* (citing § 1555–D(2) (up to $1,500 per violation against violator and/or violator's employer)).

The Court held that the FAAAA preempts both provisions. *Id.* at 371. It explained:

> We concede that the regulation here is less "direct" than it might be, for it tells *shippers* what to choose rather than *carriers* what to do. Nonetheless, the effect of the regulation is that carriers will have to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate. And that being so, "treating sales restrictions and purchase restrictions differently for pre-emption purposes would make no sense." Quoting *Engine Mfrs. Assn. v. South Coast Air Quality Management Dist.*, 541 U.S. 246, 255 (2004). If federal law pre-empts state efforts to regulate, and consequently to affect, the advertising *about* carrier rates and services at issue in *Morales*, it must pre-empt Maine's efforts to regulate carrier delivery services themselves.

*Id.* at 372. *Rowe*'s logic applies here. Like Maine's regulation of tobacco shippers, Wisconsin's common law of torts amounts to "regulat[ion] of carrier delivery services," *see id.*, and imposes costs on the operations of Sysco, a shipper, that the FAAAA was intended to preempt. *See Ye*, 74

9

F.4th at 459. Accordingly, Plaintiffs' claims against Sysco, like those against Mode, are preempted and therefore dismissed.

**B. Failure to State a Claim**

The court also holds that Plaintiffs' amended complaints fail to state legally cognizable claims against both Mode and Sysco. In so ruling, the court notes that, in this circuit, the *Twombly*/*Iqbal* pleading standard controls. Under that standard, a complaint must make factual allegations that, accepted as true, state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Applying that standard to the amended complaints in this case, the court concludes that the complaints do not assert sufficient factual matter that, accepted as true, state a claim for relief that has facial plausibility. In other words, they have not pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal citations and quotations marks omitted).

Beginning with negligent selection, this claim requires the plaintiff to allege that "(1) there was a wrongful act by the employee; (2) the wrongful act by the employee was a cause of injuries to the plaintiff; (3) the employer was negligent in hiring, training or supervising the employee; and (4) the employer's negligence was a cause of the employee's wrongful act." *See Scholz v. United States*, No. 16-CV-1052, 2017 WL 375651, at *4 (E.D. Wis. Jan. 25, 2017) (citing *Miller v. Wal–Mart Stores, Inc.*, 219 Wis. 2d 250, 267–68, 580 N.W.2d 233 (1998)). Accordingly, there must be a "nexus" between the negligent selection by the employer and the act of the employee. *Id.* (citing *Miller*, 219 Wis. 2d at 262). In assessing that employer-employee "nexus," the court "asks two questions with respect to causation: first, was the wrongful act of the employee a cause-in-fact of the plaintiff's injury and, second, was the negligence of the employer a cause-in-fact of the wrongful act of the employee." *Id.* In sum, the test of cause-in-fact "is whether the negligence

10

was a 'substantial factor' in producing the injury." *Viasystems Techs. Corp., LLC v. Landstar Ranger Inc.*, No. 10-C-577, 2012 WL 6020015, at *9 (E.D. Wis. Dec. 3, 2012) (citing *Morgan v. Penn. Gen. Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 660 (1979)).

Here, Plaintiffs have alleged no facts suggesting that Mode and Sysco were Clarke's employers or that their actions were a substantial factor in the accident. Clarke was the driver of the CMV, and there are no allegations that either Mode or Sysco ordered Clarke to drive unsafely, speed, ignore traffic rules, or otherwise break the law. *Id.* at 18:24–20:06. Indeed, there is no allegation that either Mode or Sysco even knew Clarke would be driving. At the time of the accident, Clarke had not even picked up the Sysco shipment that he was to transport to Virginia. Absent more, Plaintiffs have failed to state a claim for negligent selection, and that claim must be dismissed.

Mode and Sysco also seek dismissal of Plaintiffs' joint enterprise/venture claim. To constitute a joint enterprise under Wisconsin law, a party must allege "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *White v. Fincantieri Bay Shipbuilding*, 569 F. Supp. 3d 794, 801 (E.D. Wis. 2021) (citing *Spearing v. Bayfield Cnty.*, 133 Wis. 2d 165, 173, 394 N.W.2d 761 (Wis. Ct. App. 1986)); *see also* RESTATEMENT (SECOND) OF TORTS § 491, cmt. c (1965). "If parties engage in a joint enterprise, then each is the agent of the other, within the scope of the enterprise, and each may be held vicariously liable to one who brings a claim arising from the product of the joint venture." *Spearing*, 133 Wis. 2d at 173.

Here, there are no allegations showing the existence of a common enterprise among Defendants that shares profits. Instead, the parties entered contracts in which services were

11

provided in return for set payment. Contractual relations of this kind do not create joint ventures or enterprises, in part, because there is no profit sharing. As the court explained during oral argument, Mode and Sysco "would have gotten paid if they would have completed the job, . . . [b]ut they would not have shared the profits. They would have been paid the rate that was agreed upon under their contract with the parties. A contract isn't a joint enterprise. A contract requires each party to perform or to pay for performance.

Mode and Sysco also seek dismissal of Plaintiffs' agency/vicarious liability claim. "In a negligence case, the plaintiff must prove four elements: (1) [a] duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury and (4) an actual loss or damage as a result of the injury." *Martindale v. Ripp*, 2001 WI 113, ¶ 33, 246 Wis. 2d 67, 629 N.W.2d 698 (citation and quotation marks omitted, brackets in *Martindale*). "A person is generally only liable for his or her own torts." *Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 17, 273 Wis. 2d 106, 682 N.W.2d 328 (citing *Lewis v. Physicians Ins. Co. of Wis.*, 2001 WI 60, ¶ 11, 243 Wis. 2d 648, 627 N.W.2d 484). "Under certain circumstances, however, the law will impose vicarious liability on a person who did not commit the tortious conduct but nevertheless is deemed responsible by virtue of the close relationship between that person and the tortfeasor." *Id.* That is the doctrine of respondeat superior, under which "a master is subject to liability for the tortious acts of his or her servant." *Id.* at ¶ 18 (quoting *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis. 2d 188, 198, 423 N.W.2d 848 (1988); *Arsand v. City of Franklin*, 83 Wis. 2d 40, 45, 264 N.W.2d 579 (1978)).

Generally, a "master" is an employer, and a "servant" is an employee, and such a relationship is a prerequisite to respondeat superior vicarious liability; unless an agent is also a servant, his principal will not be vicariously liable for his tortious conduct except under certain limited circumstances. *Id.* at ¶¶ 18–20 (citations omitted). "The master/servant relationship is a

species of agency; all servants are agents but not every agent is a servant." *Id.* at ¶ 20. In general, "a master will only be liable for torts of the servant committed within the scope of the servant's employment." *Id.* at ¶ 23 (citing *Scott v. Min–Aqua Bats Water Ski Club, Inc.*, 79 Wis. 2d 316, 320–21, 255 N.W.2d 536 (1977); RESTATEMENT (SECOND) OF AGENCY § 219(1)). Whether a tortfeasor was acting within the scope of employment at the time the injury was inflicted is a question of fact for the jury to decide. *Id.*

An independent contractor is an example of a person who is an agent but not a servant. *Id.* at ¶ 24 (citing *Arsand*, 83 Wis. 2d at 51–52; RESTATEMENT (SECOND) OF AGENCY § 2(3), cmt. b). An independent contractor is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY § 2(3); *Wagner v. Cont'l Cas. Co.*, 143 Wis. 2d 379, 421 N.W.2d 835 (1988); Wis JI Civil 4060). Generally, an owner "is not responsible to a third person for the negligence of an independent contractor." Wis JI–Civil 1022.6 (Liability of one employing independent contractor) (citing *Brandenburg v. Briarwood Forestry Servs., LLC*, 354 Wis. 2d 413, 416–17, 847 N.W.2d 395 (2014)).

However, an owner or principal contractor must exercise ordinary care to prevent injury to third persons or damage to property if the work to be done is inherently dangerous. *Id.* Another exception is when the contract between the owner and the third party requires the owner to take ordinary care to prevent injury to the third party or damage to the property. *Id.* (citing *Medley v. Trenton Inv. Co.*, 205 Wis. 30, 236 N.W. 713, 715 (1931)). A contract's use of the label "independent contractor" is "not by itself dispositive; the test looks beyond labels to factual indicia of control or right to control." *Kerl*, 273 Wis. 2d 106, ¶ 24 (citing *Pamperin*, 144 Wis. 2d at 201). "To impose vicarious liability where the requisite degree of control is lacking would not" be in

13

keeping with the logic of the respondeat superior doctrine. *Id.* at ¶ 27. "If a principal does not control or have the right to control the day-to-day physical conduct of the agent, then the opportunity and incentive to promote safety and the exercise of due care are not present, and imposing liability without fault becomes difficult to justify on fairness grounds." *Id.*

Here, truck driving is not inherently dangerous. As the court explained, that exception "applies to people that deal with explosives. This [exception] applies to . . . different kind of work than simply driving a truck." *See* Wis. JI–Civil 1022.6 ("Inherently dangerous work is work from which one can naturally expect harm to arise unless something is done to avoid that harm."). As for the contractual exception, there's no allegation here that there are contracts between Sysco and Mode and anyone else that are intended to require Mode and Sysco to take ordinary care to prevent injuries to third parties or damage to property. The general understanding of what shippers do and what brokers do would certainly suggest this isn't the type of case where you would have that kind of liability, that kind of control.

Mode and Sysco also seek dismissal of Ms. Demitrou's loss of consortium claim. "Claims for the loss of society, companionship, and consortium are derivative even though they technically 'belong' to the close relative making the claim." *Finnegan ex rel. Skoglind v. Wis. Patients Comp. Fund*, 2003 WI 98, ¶ 26, 263 Wis. 2d 574, 666 N.W.2d 797 (collecting cases). As a result, "a derivative claim for loss of consortium or loss of society and companionship does not have its own elements distinct from the negligence claim to which it attaches." *Id.* at ¶ 28. Indeed, "juries are instructed that loss of consortium or loss of society and companionship are categories of damages, not separate negligence inquiries." *Id.* (citing Wis. JI–Civil 1815 (Injury to spouse: loss of consortium)). Because Plaintiffs' claims of negligent selection, joint enterprise/venture, and agency/vicarious liability against Mode and Sysco fail as a matter of law, and a loss of

14

consortium claim is derivative of the underlying claims, Ms. Demitriou's loss of consortium claim against them must be dismissed.

**C. Statute of Limitations**

Finally, at the August 1, 2023 hearing, the parties discussed the applicability of Mode and Sysco's statute of limitations defense. In Wisconsin, "[a]n action to recover damages . . . for injuries to the person caused or sustained by or arising from an accident involving a motor vehicle" must be "commenced within 3 years" of the injury or else it is time barred. Wis. Stat. § 893.54(1m)(a). The injury-causing collision at issue in this case occurred on January 24, 2020. Accordingly, Plaintiffs' action is barred beginning January 24, 2023.

Wisconsin's three-year statute of limitations on personal injury actions, Wis. Stat. § 893.54(1m)(a), does not bar all of the plaintiffs' claims against Mode and Sysco. Plaintiffs Tischauser, Luedtke, and Rothenberger commenced state court actions against those defendants that were timely filed within the statute of limitations and consolidated with the cases presently before the court. It is the commencement of the action, not the service of the complaint, that determines whether an action falls within the statute of limitations. *See* Wis. Stat. §§ 801.02(1), 893.54. In this case, that rule clearly applies to Tischauser, Luedtke, and Rothenberger, each of whom filed state court actions naming Mode and Sysco as defendants on January 23, 2023. *See* Case No. 23-cv-556, Dkt. Nos. 1-1, 1-2; Case No. 23-cv-539, Dkt. Nos. 1-1, 1-2; Case No. 23-cv-538, Dkt. Nos. 1-1, 1-2. However, because the Demitrious did not file an action naming Mode and Sysco as defendants before January 24, 2023, the statute of limitations provides an additional reason, at least as to them, to dismiss Mode and Sysco as defendants in this action.

15

## CONCLUSION

For the foregoing reasons, Mode's and Sysco's motions to dismiss Plaintiffs' tort claims against them because they are preempted by federal law and because they fail to state a claim upon which relief can be granted under Rule 12(b)(6) (Dkt. Nos. 142, 157 & 169) are **GRANTED**. Mode's and Sysco's motions to dismiss the claims asserted by Dustin and Rhonda Demitrou are also granted on the ground that they are barred by the statute of limitations. Accordingly, Mode and Sysco are dismissed as defendants from this action. Because claims remain as to other parties, this order is not final and judgment will not be entered. Mode and Sysco are the only named defendants in Case Nos. 23-cv-538, 23-cv-539, and 23-cv-556; therefore, those cases are terminated.

**SO ORDERED** Green Bay, Wisconsin this 4th day of December, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge